# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHERLYN RITTINGER, and RICHARD RITTINGER, | : |
| | : |
| Plaintiffs | CIVIL ACTION NO. 3:17-0453 |
| | : |
| v | |
| | : (JUDGE MANNION) |
| KEYSTONE MAINTENANCE SERVICES CORPORATION, | : |
| | : |
| Defendant | : |
| v | : |
| SCM HANDLING, | : |
| Third Party Defendant | : |

## MEMORANDUM

Presently before the court is the motion to dismiss of the third party defendant SCM Handling[1] ("SCM") made pursuant to Fed.R.Civ.Pro. 12(b)(2). The motion argues that the third party complaint, which defendant Keystone Maintenance Services Corporation ("Keystone") filed against SCM, should be dismissed for lack of general and specific personal jurisdiction over SCM, a foreign corporation. Because the court does not have general or specific personal jurisdiction over SCM, the motion will be **GRANTED**, and Keystone's third party complaint against SCM will be **DISMISSED**.

---

[1]SCM's properly known as SCM Handling Ltd.

## I. BACKGROUND

On March 13, 2017, plaintiffs Cherlyn and Richard Rittinger filed a complaint, (Doc. 1), which alleged that on March 17, 2015, while Cherlyn was an employee of Proctor & Gamble Company ("P&G") in its facility located in Mehoopany, Pennsylvania, she was operating a polymanipulator machine which caused severe and serious injuries to her back. Plaintiffs allege that there was a dangerous and/or hazardous condition of the machine, and that the machine was in possession of, controlled and/or maintained by Keystone.

On August 31, 2017, Keystone filed a third party complaint against SCM, and alleged that the machine, which Cherlyn Rittinger was operating at the time she was injured, was negligently designed, fabricated, constructed, programmed, assembled, installed, inspected, and tested by SCM. Keystone also alleged that the manipulator at P&G's plant in Mehoopany was "designed and/or manufactured and/or provided certain parts by [SCM]." Thus, Keystone alleged that SCM caused or failed to prevent Cherlyn Rittinger's injuries. (Doc. 16).

On January 18, 2018, SCM filed its motion to dismiss for lack of jurisdiction. (Doc. 27). SCM's motion has been briefed and exhibits were filed.[2] Plaintiffs did not file a brief in opposition to SCM's motion and therefore

---

[2]In its brief in support of its motion, SCM requests oral argument. However, based on the submissions of the parties and the discussion below, the court finds that oral argument is not required. Also, Keystone, in its brief in opposition to SCM's motion, requests that if the court finds the evidence of the parties is not sufficient to show it has jurisdiction over SCM, then the court

2

are deemed as not opposing it under Local Rule 7.6, M.D.Pa.

## II. STANDARD

Rule 12(b)(2) provides for the dismissal of a complaint if the plaintiff fails to establish that the court has personal jurisdiction over a party. Fed.R.Civ.P.12(b)(2). Rule 12(b)(3) in conjunction with 28 U.S.C. §1391, requires the court to dismiss the case if the plaintiff fails to show that the district in which the suit is brought is the proper venue. Fed.R.Civ.P. 12(b)(3).

Rule 12(b)(2) requires the court to accept the truth of factual allegations in the complaint relating to jurisdiction and the reasonable inferences that flow therefrom unless the moving party produces evidence tending to contradict the existence of jurisdiction. In re Chocolate Confectionary Antitrust Litigation, 674 F.Supp.2d 580, 595 (M.D.Pa. 2009). In other words, a party may rely entirely on allegations unless and until the moving party presents the court with actual evidence to the contrary. Id.; Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) ("when the court does not hold an evidentiary hearing on the motion to dismiss, . . . the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."); but see, e.g., Rodi v. S. New Eng. Sch. of Law, 255 F.Supp.2d 346, 348 (D.N.J. 2003) ("the plaintiff may not rely on the pleadings, but rather must introduce sworn

---

allow limited jurisdictional discovery and hold the motion in abeyance. The court finds the present submissions are sufficient to decide SCM's motion since the relevant facts are not disputed.

3

affidavits or other competent evidence.").

If the moving party does submit competent evidence refuting jurisdiction, the non-moving party shoulders the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the matter. In re Chocolate Confectionary Antitrust Litigation, 674 F.Supp.2d at 595 ("Once these allegations are contradicted by an opposing affidavit, however, plaintiffs must present similar evidence in support of personal jurisdiction."). At this point, the plaintiff may not rely on bare pleadings but must support those pleadings with "actual proofs, not mere allegations." Id. (quoting Patterson by Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990)). As such, "although the burden of persuasion always lies with the non-moving party, the burden of production rests initially with the party moving for dismissal under Rule 12(b)(2)." Id. at 595, n. 21.

Additionally, "[a] motion under Federal Rule of Civil Procedure 12(b)(2) 'is inherently a matter which requires resolution of factual issues outside the pleadings, i.e., whether in personam jurisdiction actually lies.'" Farber v. Tennant Truck Lines, Inc., 84 F.Supp.3d 421, 426 (E.D.Pa. 2015) (citation omitted).

### III. DISCUSSION

Both SCM and Keystone have filed evidence regarding the issue of whether the court has personal jurisdiction over SCM. Thus, Keystone cannot simply rely on bare pleadings in its third party complaint to establish that the

4

court has personal jurisdiction over SCM.

"A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." Farber, 84 F.Supp.3d at 426 (citation omitted). "The Pennsylvania [long-arm] statute [42 Pa.Cons.Stat. §5322(b)] permits the courts of that state to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the Due Process Clause of the Fourteenth Amendment." Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992). "The Due Process Clause of the Fourteenth Amendment to the Constitution permits personal jurisdiction so long as the nonresident defendant has certain minimum contacts with the forum such that maintenance of the suit does not offend "'traditional notions of fair play and substantial justice.'" Farber, 84 F.Supp.3d at 426 (citations omitted).

"There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction." Plumbers' Local Union No. 690 Health Plan v. Apotex Corp., 2017 WL 3129147, *4 (E.D.Pa. July 24, 2017) (citation omitted). "A Plaintiff may demonstrate that a court's exercise of personal jurisdiction is proper, by establishing that a court has either general jurisdiction or specific jurisdiction over the defendant, or by establishing that the defendant has consented to jurisdiction." Id. (citation omitted). There is no claim in this case that SCM has consented to the jurisdiction of this court. Rather, Keystone contends that the court can exercise general and specific personal jurisdiction over SCM. The court will first address general jurisdiction.

**1. General Jurisdiction**

Similar to the case of Farber, 84 F.Supp.3d at 423, "[t]his case concerns the impact of two recent United States Supreme Court decisions, Goodyear Dunlop Tires Operations, S.A. v. Brown, 546 U.S. 915, 131 S.Ct. 2846 (2011), and Daimler AG v. Bauman, 571 U.S. 117, 134 S.Ct. 746 (2014), on a federal court's authority to exercise general jurisdiction over a nonresident corporate defendant, consistent with the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." The court will now address whether it can exercise general jurisdiction over SCM in Pennsylvania, a foreign company which is incorporated and has its principal place of business in the United Kingdom, based on Supreme Court decisions in its two general jurisdiction cases, namely, *Goodyear* and *Daimler.*

As the court in Plumbers' Local Union, 2017 WL 3129147, *4, explained:

> "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." Daimler, 134 S. Ct. at 760. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear, 564 U.S. at 919. The paradigm forums, in which a corporation is reasonably regarded as at home, are the place of incorporation and the principal place of business. Daimler, 134 S. Ct. at 760. "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017) (quoting Daimler, 134 S. Ct. at 761, n.19). However, "the exercise of general jurisdiction in every State in which a

corporation 'engages in a substantial, continuous, and systematic course of business' ..., is unacceptably grasping." Daimler, 134 S. Ct. at 761 (citation omitted). "The Fourteenth Amendment due process constraint described in *Daimler* ... applies to all state-court assertions of general jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or business enterprise sued." Tyrrell, 137 S. Ct. at 1558–59.

SCM argues that this court cannot exercise either general or specific personal jurisdiction over it based on the following:

> SCM is a foreign corporation having its principal place of business at Bishops Lydeard, Taunton, Somerset, TA4 3RU, United Kingdom. It has no "continuous and systematic" contacts with Pennsylvania; and as such, SCM could not have reasonably anticipated being haled into Court in Pennsylvania. The sole contact purportedly supporting jurisdiction is the sale of one machine to a Ohio Corporation headquartered in Cincinnati, Ohio, which was manufactured in the United Kingdom and shipped directly from the United Kingdom to Ohio. Thereafter, the purchaser relocated the machine, without the knowledge of SCM, to Pennsylvania, where it allegedly caused Plaintiffs harm.

SCM's motion is supported by the Affidavit of Jonathan Boulton, Managing Director of SCM. (Doc. 28-1). Boulton avers the following facts: SCM is a foreign corporation having its principal place of business in the United Kingdom; SCM is not incorporated, is not registered to do business, does not own property, does not have bank accounts in Pennsylvania; SCM does not manufacture products in Pennsylvania; SCM sold the subject machine to P&G in Ohio and P&G did not disclose to SCM that it would move the machine to Pennsylvania. The Affidavit further indicates that SCM does not advertise, solicit business, or market its products in Pennsylvania and,

7

that it does not sell any product through a Pennsylvania distributor.

Keystone argues that general jurisdiction over SCM is proper in this court, pursuant to 42 Pa.C.S.A. §5301(a)(2)(iii), since SCM carries on "a continuous and systematic" part of its business in Pennsylvania based upon "SCM's design, manufacturing and supplying over 100 machines and manipulators to P&G and having their engineers and technicians travel to P&G in Mehoopany for purposes of inspection and repair along with offering quotes pertaining to inspection and shipping of parts to same." As such, Keystone contends that SCM's contacts with Pennsylvania were systematic, continuous, and substantial enough to permit this court to exercise general jurisdiction over SCM even though it is incorporated and has its principal place of business in the U.K.

In support of its contentions, Keystone submitted the Affidavit of James Fowler, President of Keystone, (Doc. 34), in which he essentially states as follows:

> that the P&G plant in Mehoopany has over 100 machines/manipulators which were designed, manufactured and supplied by SCM, including 78 easy lifts, 17 BLU lifts and 15 landing zone lifts; that technicians from SCM have traveled to Mehoopany to the P&G facility, including June of 2015, wherein two engineers, one being Mark Porter, from SCM were on site to inspect, repair and make recommendations regarding SCM's manipulators; and that technicians from SCM have traveled to Mehoopany to the P&G facility for purposes of maintenance of the products designed, manufactured and supplied by SCM.

Fowler also avers that he has dealt with "SCM pertaining to inspections and service of the machines and manipulators designed, manufactured and

supplied by SCM at the P&G facility in Mehoopany, and that "SCM offered a quote pertaining to annual service and check of the manipulators at P&G including replacement of any faulty parts." Lastly, Fowler avers that he has "purchased parts for machines/manipulators manufactured and designed by SCM at P&G in Mehoopany, Pennsylvania directly from SCM and the parts were shipped by SCM to Mehoopany, Pennsylvania."

Keystone also submitted three exhibits attached to Fowler's Affidavit, (Doc. 34-1, 2 & 3), which, as it states, show as follows:

> Exhibit "B" - SCM advertises on its website that said company provides "equipment across the UK, Europe and throughout the world across a number of industry sectors."
>
> Exhibit "C" - SCM shipped a product described as TRACK DIMS 611-26-28 to Procter and Gamble Paper Products, Route 87, Mehoopany, Pennsylvania 18629 as the Consignee on May 16, 2016, with a bill of lading for a shipment weighing 354 pounds.
>
> Exhibit "D" – Incident Report Giving Rise to Litigation - SCM Handling – equipment owner of the line manipulators came to the facility (P&G in Mehoopany, PA) to test every manipulator and identify any worn parts that needed replacement.

As the court in Farber, 84 F.Supp. 3d at 429, explained "the Supreme Court makes clear in *Daimler* that 'the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the state are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" (citations omitted). Thus, according to the Supreme Court, "in all but the most exceptional circumstances, a corporation is 'at home' only in the two 'paradigm [ ] ... bases for general jurisdiction': its state

9

of incorporation and its principal place of business." Id. (citations omitted).

No doubt that *Goodyear* and *Daimler*, and their "more stringent 'essentially at home' standard", "restrict a state's ability to subject a nonresident corporate defendant to general personal jurisdiction." Id. at 430 (string citations omitted). The court finds that the instant case is not an exceptional case such that it can exercise general jurisdiction over SCM since Pennsylvania cannot "be considered 'a surrogate for the place of incorporation or head office'" of SCM as required. Id. at 430 (citation omitted). In Farber, id. at 432, the court considered evidence, similar to the evidence presented in our case, and found that it did not have general jurisdiction over the defendant. The court in Farber, id., stated:

> Even in the light most favorable to the Plaintiffs, this allegedly regular and systematic conduct is insufficient to subject [defendant] to general jurisdiction in Pennsylvania under *Goodyear* and *Daimler*. Although those cases "do[ ] not hold that a corporation may be subject to general jurisdiction only in a forum where it is incorporated or has its principal place of business," Daimler, 134 S.Ct. at 760, they do "make clear that even a company's 'engage[ment] in a substantial, continuous, and systematic course of business' is alone insufficient to render it at home in a forum," Sonera Holding B.V. v. Çukurova Holding A.S., 750 F.3d 221, 226 (2d Cir.) (per curiam) (quoting Daimler, 134 S.Ct. at 761), *cert. denied*, —— U.S. ——, 134 S.Ct. 2888, 189 L.Ed.2d 837 (2014). "A corporation is not 'at home' in 'every state in which it engages in a substantial, continuous, and systematic course of business.'" Locke v. Ethicon Inc., 58 F.Supp.3d 757, 762, 2014 WL 5819824, at *3 (S.D.Tex. Nov. 10, 2014) (emphasis in original) (quoting Daimler, 134 S.Ct. at 760).

Moreover, "[m]ere deliveries in Pennsylvania, even occurring at regular intervals, are insufficient to justify Pennsylvania's assertion of general

10

jurisdiction over [defendant] in causes of action unrelated to those deliveries." Id. at 433 (citation omitted). As stated, SCM's delivery of the machine which allegedly injured the plaintiff was made to P&G in Ohio.

Thus, based on *Goodyear* and *Daimler*, it is clear this court cannot exercise general jurisdiction over SCM. *See Farber, supra*; *Plumbers' Local Union, supra* ("*Daimler* establishes, however, that engaging in a substantial, continuous, and systematic course of business is insufficient to establish general jurisdiction.").

As stated, Keystone requests jurisdictional discovery. Keystone fails to explain why it would need 120 days of limited jurisdiction discovery regarding the issue of general jurisdiction and how any such discovery might establish such jurisdiction by this court over SCM in light of *Goodyear* and *Daimler*. In fact, Keystone largely relies upon cases decided well before the *Goodyear* and *Daimler* cases. SCM states that limited jurisdictional discovery is "only permitted when an issue of fact is raised, and "[Keystone] fails to state what issue of fact is contested." The court in its discretion will deny Keystone's request for jurisdictional discovery. *See* Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) ("If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." (internal citations omitted).

11

### 2. Specific Jurisdiction

Alternatively, Keystone argues that this court has specific jurisdiction over SCM. "Specific jurisdiction is dependent upon the relationship of the litigation to the defendant's contacts with the forum, i.e., the court's focus is on the minimum contacts between the non-resident defendant and the forum." Gorton v. Air & Liquid Systems Corporation, 303 F.Supp.3d 278, 291-92 (M.D.Pa. 2018) (citations omitted). "Specific jurisdiction is present only if the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant 'should reasonably anticipate being haled into court' in that forum." Id. at 292 (citations omitted).

The central question is whether SCM purposefully availed itself "of the privilege of conducting business within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). The defendant must "purposefully direct[] [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities." BP Chemicals Ltd. v. Formosa Chemical & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000) (quotations and citations omitted). Moreover, the Supreme Court clarified that the minimum contacts "analysis looks to the defendant's contact with the forum State itself, not the defendant's contact with persons who reside there." Walden v. Fiore, 134 S.Ct. 1115 (2104). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Id. at 1121. "[A]lthough physical presence

12

in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." Id. (citation omitted).

Thus, "specific personal jurisdiction over a defendant exists when: (1) the defendant 'purposefully directed [its] activities' at the forum; and (2) the litigation 'arise[s] out of or relate[s] to' at least one of the defendant's activities in Pennsylvania. Plumbers' Local Union, 2017 WL 3129147, *5 (citation omitted). "If the 'purposeful availment' and 'relatedness' requirements are met, a court may exercise personal jurisdiction as long as the assertion of jurisdiction 'comport[s] with 'fair play and substantial justice.'" Id. (citing [Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)](#)).

In support of its contention that SCM has actively availed itself of the laws and protections of Pennsylvania, Keystone argues that SCM "has purposely availed itself of the privilege of conducting activity in Pennsylvania by shipping its products to Procter and Gamble, which has extensive manufacturing facilities in Mehoopany, Pennsylvania," and that SCM "has designed, manufactured and supplied over 100 machines and manipulators to the Procter & Gamble facility located in Mehoopany, Pennsylvania including 78 easy lifts, 17 BLU lifts and 15 landing zone lifts." (citing to Fowler's Affidavit). Keystone also states that SCM's engineers and technicians traveled to Mehoopany to inspect, repair and make recommendations to P&G with respect to its manipulators, and that SCM offered a quote to P&G for annual service and inspection of the manipulators as well as for the replacement of

13

faulty parts. Further, Keystone states that it bought parts for the manipulators at P&G from SCM and that SCM shipped the parts directly to Mehoopany.

Keystone states that while it has showed SCM has the required "minimum contacts" with Pennsylvania, in the alternative, it requests 120 days of limited jurisdiction discovery regarding the issue of specific jurisdiction.

The court now considers the first requirement stated above.

In determining whether SCM "purposefully avails itself of the privilege of conducting activities within [Pennsylvania]", the court is mindful that "[p]hysical presence in the forum is not required, '[b]ut what is necessary is a deliberate targeting of the forum.'" Plumbers' Local Union, 2017 WL 3129147, *5 (citations omitted). In this case, Keystone has sufficiently established that SCM has direct sales or shipments of its products into Pennsylvania, and "the presence of direct shipments will show the defendant's purposeful availment." Id. at *6 (quoting Renner v. Lanard Toys Ltd., 33 F.3d 277, 282 (3d Cir. 1994)). Thus, "[d]irect sales of goods into a forum will also establish purposeful availment." Id. (citing Arch Ins. Co. v. Tech. Invs., LLC, No. 15-1223, 2016 WL 1257618, at *6 (E.D.Pa. Mar. 31, 2016) (finding that four direct sales of products to Pennsylvania customers are sufficient to establish purposeful availment)).

Thus, the court finds that SCM has purposefully availed itself of conducting activities in Pennsylvania.

Next, the court considers the relatedness factor. "[S]pecific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very

controversy that establishes jurisdiction.'" Id. (quoting Goodyear, 564 U.S. at 919). "[A] connection between the forum and the specific claims at issue" is required. Id. (quoting Bristol-Myers Squibb Co. v. Superior Court of California, 137 S. Ct. 1773, 1781 (2017)). "[A] plaintiff's claims must 'arise out of or relate to' a defendant's forum contacts", and in order for claims to "'arise out of or relate to' a defendant's contacts, 'the causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable.'" Id. (citing O'Connor, 496 F.3d at 323). "The inquiry is 'necessarily fact-sensitive.'" Id.

SCM argues that there is no specific jurisdiction over it in Pennsylvania since Keystone "failed to establish that their claims 'arise out of or relate to' [its] activities within Pennsylvania." SCM states that "[r]ather than focusing on SCM's forum related activities which give rise to the cause of action, [Keystone] argues that [its] conduct in Pennsylvania unrelated to the subject product, which was a manipulator/machinery [ ], is sufficient to subject SCM to the jurisdiction of Pennsylvania."

Keystone relies upon Fowler's Affidavit. While Fowler avers that he has purchased parts for manipulators made by SCM directly from SCM and that they were shipped to Mehoopany, Pennsylvania, he does not state that any of the parts which were shipped by SCM to Mehoopany are related to the plaintiffs' claims. Nor do the plaintiffs make any such allegations. Additionally, while Exhibit C attached to Fowler's Affidavit shows that SCM shipped a

15

product described as "TRACK DIMS 611-26-28" to P&G, in Mehoopany, Pennsylvania on May 16, 2016, as SCM states, this is of no moment since this shipment occurred more than a year after the plaintiff alleges she was injured. Thus, this product is clearly not related to the plaintiffs' claims. Fowler also avers that P&G has over 100 machines manufactured by SCM at its Mehoopany, Pennsylvania plant and that SCM's technicians go to the plant to maintain, service and repair the machines. However, none of these machines are alleged to have caused the plaintiffs' injuries. Rather, Boulton shows that SCM does not manufacture any products in Pennsylvania, does not market or sell through a distributor its products in Pennsylvania, and that it sold and delivered the subject machine to P&G in Ohio. Also, SCM had no knowledge that the subject machine would be moved to Mehoopany, Pennsylvania by P&G. "Simply put, the defendant's contacts with the forum state must be material to the claim. The court may not exercise personal jurisdiction if the defendant's contacts with the forum are 'too attenuated.'" Gorton, 303 F.Supp.3d at 292. (citations omitted).

Here, the court finds that the plaintiffs' claims do not "arise out of or relate to" SCM's forum contacts. The plaintiffs' claims against Keystone and Keystone's claims against SCM all relate to the manipulator machine which was designed, manufactured and tested by SCM. However, it is undisputed that the subject machine was sold to P&G, a Ohio Corporation, and shipped to Ohio, and that SCM did not know that the machine would be sent to P&G's plant in Pennsylvania. Thus, all of the other contacts which Keystone states

SCM had with Pennsylvania, as SCM explains in its reply brief, (Doc. 35 at 3-5), are clearly not the "but for" cause of the Pennsylvania claims raised by the plaintiffs. Additionally, even though Fowler states that he bought parts for manipulators directly from SCM and that they were shipped by SCM to Mehoopany, Pennsylvania, none of these parts are related to any claims in this case. As such, it cannot be said that SCM availed itself of the benefits and protections of Pennsylvania law when it sold and delivered the subject machine to P&G in Ohio. In fact, as SCM points out, the instant claims do not arise out of or relate to any of its activities in Pennsylvania. Thus, it was not reasonably foreseeable that SCM would have to litigate the instant claims regarding its machine in Pennsylvania.

Accordingly, specific personal jurisdiction over SCM does not exist in Pennsylvania because the two aforementioned requirements are not satisfied. Since the court finds that the "relatedness" requirement is not met, the court does not have to consider whether the exercise of personal jurisdiction over SCM comports with "fair play and substantial justice." Plumbers' Local Union, 2017 WL 3129147, at *5 (quoting Burger King, 471 U.S. at 476); *see also* Gorton, 303 F.Supp.3d at 292. (citation omitted).

Finally, the court denies Keystone's request for jurisdictional discovery regarding the issue of specific personal jurisdiction since there are no disputed facts with respect the "relatedness" requirement for such jurisdiction. *See* Toys "R" Us, 318 F.3d 456-57. Nor does Keystone explain how any such discovery "would speak to an essential element of the personal jurisdiction

calculus." Id.

## IV. CONCLUSION

For the reasons discussed above, SCM's motion to dismiss, (Doc. 27), Keystone's third party complaint, (Doc. 16), for lack of personal jurisdiction is **GRANTED**. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 18, 2018**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-0453-01.wpd